The Fourth District Appellate Court of the State of Illinois has reconvened. The Honorable Eugene G. Daugherty presiding. Good afternoon. We are calling case number 4-25-0706, Street v. Zeller Digital Innovations. But I ask counsel for the appellant to please state your name for the record. Attorney Fadi B. Rustom of Holland Rustom, your honor. And counsel for the appellee. Jay Scholl of Davison Campbell, your honor. Thank you. Mr. Rustom, you may proceed with your argument. Thank you, your honor. Your honors, may it please the court, counsel, this case is about a denial of a motion for summary, determination of a major issue that the appellant filed. It was denied by the trial court level. In addition to that, there were a series of, essentially, a motion for summary judgment that was granted on behalf of the appellee. But essentially, this case comes down to one major issue that I cited in my appellant's brief, and that is whether the appellee, as I call them, room-ready, that is, they're doing business as name, whether room-ready's August 27, 2018, unilateral modification of its 2018 playbook commission plan was supported by consideration. The appellant, obviously, Christine Street, believes that that is not the case. I'll explain why, and of course, it's cited pretty readily in the appellant's brief. I believe that that is the major issue here because it seems like that is the crux issue that even at the trial court level, counsel and I sort of discussed before the trial court level about just what is it that would be the threshold issue, and it comes down to that. So I'll give you a little bit of a recitation of the facts. As we see it- the critical issue here, appellee indicates that there are no damages established here that their client was paid in full. The defendant's summary judgment motion was supported by Nix's affidavit, and Nix swore that the plaintiff was paid commissions for all the projects that she closed or won prior to her termination that were paid by clients after her termination. There was a spreadsheet that listed all of the plaintiff's closed projects and the commissions that she had earned on the projects, and a ledger sheet reflecting the payments that a defendant had made to the plaintiff. So there was evidence in support of the summary judgment motion that there were no damages established by plaintiff. Before you get to the issue you've identified as the critical issue, did you, did plaintiff present evidence establishing damages, which would be a key component to any of the three causes of action plead? Certainly, Your Honor. I appreciate the question. I'll jump to that issue directly. We believe that the record will indicate that there's a genuine issue of material facts related to that very issue, the existence of damages. Certainly, it is our burden to show that there were damages. We believe that the mere fact that we disagree with that and provided affidavits stating the exact opposite, as I put in my appellant's brief, indicates that this was not proper for a motion for summary judgment to be granted. And that, you know, ends in a genuine issue of material facts. As it relates to the record, there were multiple of these spreadsheets that were provided by the defendant. Now, of course, if you look back at the facts of the case, my client worked for them up until around August of 2018 and was terminated. She had some information, some documentation showing what kind of sales commissions that she had. Most of the information that came subsequent to that came directly from the defendant. I should say the appellee in this case, the employer. Yet the employer provided many, multiple of these spreadsheets. And on some of them during the deposition and thereafter, my client was deposed. And one of the representatives of the defendant, the appellee, the employer was deposed. And they gave up additional multiple of these spreadsheets. And on them, indicated that a lot of those commissions that started with Christine Street was then paid off to another salesperson. And that's the crux of the problem. I think the documents came directly from the defendant, not from my client. We had not subpoenaed third parties to obtain all the information that came from that. In fact, there were a few, I'd say about seven or eight different clients, some major, some smaller, that my client sold certain deals to. But right before being able to get an order, a purchase order from them and allow the employer to finish up the deal, she was terminated. So our argument is that the documents from the defendant, the employer themselves, indicate that those commissions were paid to other people. And that was admitted in multiples of the emails that we submitted in the attachments to the summary judgment. Of course, the entire motion and the exhibits were all attached to the appellant's brief as exhibits as well. I try to cite to the court those specific items as I can locate them. But that's essentially the case is it came from the defendant themselves. And if they disagree with that, then that's an issue of material fact, a genuine one, definitely. How much does that depend on evidence that you don't yet have? I mean, your client seemed unable to give definite responses about any deals that had been closed prior to her termination. And the court cut off discovery as of September of 24. So where was that gonna come from? Some of that came directly from the defendant in supplemental discovery requests and responses. There were two depositions in the case, one of the plaintiff, in which case she indicated, and I'm summarizing, that when she was terminated, she no longer had access to a lot of the materials that were there, even though it was claimed that she had taken some of those documents. She had her own lists. Of course, when you're in sales, you continue to keep your own list. So that occurred. And then, of course, as we moved into the written discovery and then later on the deposition of the representative from the employer, they provided some of these spreadsheets. It was very difficult to read a lot of them. As the plaintiff sat down and she was asked by counsel for the employer just what these were, well, it was very difficult to read. They're all very highly pixelated, if you will, bad copies. But then we later subsequently received more. So I believe that they're properly in the record. And if put on a remand, if we determine the main issue that I had suggested earlier, if that threshold issue gets resolved, because we believe that the review is on de novo review on a legal basis, essentially, if it's remanded, all of that will be part of the record and we should be able to prevail moving forward at trial court level. That's what we believe is the case here. As it relates to the plaintiff, yeah, she was cut off and she didn't have that information going into that particular deposition because she relied on the defendant for that information. Mr. Rustem, I wanna go back to what you just said. If this was remanded, there would be no additional discovery because discovery has been cut off. What are you saying? How would damages be determined? So in the written discovery post the deposition of the representative from the employer, additional supplemental spreadsheets were provided. I asked counsel for them during the deposition, they were provided. Those are the bases for indicating, okay, how much commissions were paid? Of course, we're looking back so many years now, eight years but at the time those numbers, commission dollars had been decided to be paid to someone else. Okay, here we are on appeal. In part, determining whether it was proper for a defendant summary judgment to have been granted. Defendant claimed that plaintiff did not set forth evidence of damages. You're saying there is evidence of damages in the record but on appeal here, you have not identified those damages. So here's the difficult thing about the way that this argument for trial went. So as it related to the summary judgment. So we did not end up getting a transcript of the court's decision, right? And so there was an order that was entered June 9th of 2025 and the order specifically stated as so stated by the court. I know what the case law says. I know what the rules say. I can't come back and indicate what I believe the court meant by the decision or not. But I can tell the court that just based off of the way that the, and I can argue, I believe that just the way that the decisions were being made, a denial of the motion for summary determination of a major issue. So the plaintiff's motion for that related to the playbook that changed the issue as it related to when she would be able to obtain commissions and then entry of and granting motion for summary judgment for the defendant, that being the employer. The way that worked out at that point in time, we were dealing with the issue of, at least from my perspective, the issue of the termination of a major issue, right? I was pushing forward on behalf of the plaintiff that as long as that issue is dealt with, we can move forward through trial. The defendant ended up having, arguing that there was no damages. I will say this to the court, as an officer of the court, there were multiple spreadsheets that were provided post depositions as a follow-up and written discovery. And those provide who, not being Christine Street, right? To whom on exactly any of those five or six different clients that were claimed. And we believe that that number is in excess of a certain dollar number. I don't know that it's proper for me to share exactly what that looks like now, but any one of those disputes, as long as it's in the court record, we believe ends in a genuine issue of material fact that prevents the trial court from having entered some re-judgment in that regard. But aren't the affidavits submitted by Appalee accepted as true unless they are contradicted and they don't appear to be? Well, they were contradicted. They were contradicted in the affidavits that were supported by the appellant in the motion for summary judgment and in the responses to the motion for summary judgment, all of which is part of the common law record. I can locate the exact common law record page number if the court would like, but knowing that this was gonna be an issue, I indicated in an affidavit, I asked my client to submit an affidavit that discussed exactly this issue, that she does believe that there were commissions that were paid to other salespeople that wherever the defendant, the appellee cut her off. In other words, it kind of goes along with the procuring rule, which is later stated in the brief, the concept that where a salesperson takes a sale from point A to point Y, if you will, and then gets cut off at the knees, well, does that person get to receive commission dollars for working it from point A to point Y? Or is it just because it got cut off at the knees before point Z, they don't get to get paid? Well- But counsel, the fact that somebody else got paid a commission for a certain customer doesn't take the argument far enough. What's missing is did your client lock down that customer for the employer before her termination? I think just saying somebody else got paid doesn't necessarily mean she earned the payment instead. And in her affidavit, thank you for the point, Your Honor. I would respectfully suggest that as it related to her affidavit, Christine Street's affidavit, she indicated, and that is part of the record, that she worked those files vigorously until it was right before the point of getting sold. And in fact, there's an email or two directly from a room-ready account executive that indicated, hey, Philip McArdle is the person's name. Hey, we do not have a clear commission payout definition in the compensation plan. Henceforth, if you don't have a purchase order, then it's gonna be moved on to somebody else. So here is the employer saying, well, look, we need to have a better plan because I paid too many other people, Dave Matlin and Michelle Hastie in the past. They've now left the office. I feel like we didn't wanna have to pay them commission. So right before I terminate you, Christine Street, we're gonna include this new provision. At most two days before she got terminated, which means, seems to me that she had worked those particular jobs and then got cut out at the very end. In fact, it seems to me that the whole purpose of the new plan in August, remember these playbooks would routinely be done in January of every year, 2016, 2017, 2018. And then this one happened to come right before she got terminated. August 27th is when it was ruled out, August 29th, 2018 is when she was terminated. I hope I've addressed the courts. Well, yeah. What's your best case for saying that there is a genuine issue of material fact that your client had earned a commission in a certain amount under the prior version of the playbook. So forget about the new one. Great question, great question. I do actually have that language here, your honor. Let me locate that very briefly. The main argument that we have there is under the prior version, the original, which we think is the one that sticks. It discusses language that deals with how salespeople shall be paid a certain dollar number because they have, I'll read this here exactly. And I quote this, at the end of each month, all jobs that have been paid in full will pay 17% of the actual GP to account executives draw account. Above anything above account balance will be paid to account executives. And it goes through a list of KPIs, key performance indicators, so percentages that are there. But ultimately we're looking at the 17%. That was the original language. There was no equivocation about termination. There was no equivocation about any, other varying circumstances that would allow the employer not to pay. And so based off of the original, we call it the 2018 playbook, she was entitled to it. Now, granted, there were some accounts that had yet to be paid, but that's just further down the line, as we've argued in the procurement rule. Christine Street had done primarily all of the work. She calls, she gets the contacts, she does a very preliminary design, she talks to the engineering group, she puts together a plan, she puts together a pricing sheet, she gets that back, it goes back and forth. And then finally there's a PO or a purchase order. Well, on some of these that hadn't quite happened, but she had still done primarily all of the work. In fact, it seems like the other salespeople who took over her job, those particular accounts, ended up getting a windfall for not doing much. I know that there is a disagreement in terms of, as council probably will say, there was disagreement on each of the particular accounts to what degree did Christine Street do some of the work and to what degree did the folks over at Room Ready have to do some of the work. But that again is a genuine issue material fact. There should have been a trial as it related to allowing a judge or jury to determine that, hey, there's a certain percentage of the work that Christine Street did, that she's allotted a certain percentage of the commission versus what Room Ready should have kept back and paid another salesperson. But that didn't happen because summary judgment was entered. And that's why we believe it should be overturned. All right, if there's nothing further and if no questions from my colleagues, we'll turn it over to Mr. Scholl. Thank you, Your Honor. May it please the court. As I said, my name is Jay Scholl and I'm counsel for the defendant appellee Zeller Digital Innovations, Inc. that does business as Room Ready. The circuit court properly granted summary judgment because the undisputed evidence shows Street cannot establish damages without speculation and she was paid every commission she was entitled to pay under any applicable theory. Even accepting every legal theory advanced by Street, including the original 2018 playbook, the Procuring Cause Doctrine, Street still cannot identify a single unpaid commission that she actually earned. For that reason alone, judgment should be affirmed. Street focuses almost entirely on contract interpretation and handbook modification. But the case actually turns on something far simpler as Your Honors have noted. Even if Street is correct on every legal theory, she still cannot prove that any commission remains unpaid. Without provable damages, her claims fail as a matter of law. That's because damages cannot be based on speculation or conjecture. That is well-established, both generally, such as in the Fourth District case of Seafelt versus Milliken National Bank of Decatur, where the court stated, in determining the genuineness of a fact, a court should ignore personal conclusions, opinions, and self-serving statements and consider only facts admissible in evidence under the rules of evidence. It's also well-established with respect to damages, like in the case of Perfection Corporation versus Lochnegart Corporation. There, the court said damages may not be awarded on the basis of speculation and conjecture. In this case, all that Street has presented was speculation and conjecture. Street bases her claims on projects she identifies on a document that was marked as Exhibit 2A in her deposition. That document can be found in the record as C-488 through C-490. Street was asked about that document, and she admitted she doesn't know whether or not a purchase order or the equivalent was ever entered into on those projects. She was asked. Is a purchase order required under the original version of the playbook? Under the original version of the playbook, the earning of commissions post-termination of employment was not specifically addressed. Instead, at the time, that was a part of the company's practice and procedures that had been well-established at that point. So focusing on that purchase order or the equivalent, she was asked, it's possible that a project listed on here that a purchase order was never entered into between Room Ready and the customer, correct, she said? Correct. Now, focusing more generally, she had to admit it's possible there was never any profit on the project, whether there was a PO or not. She was asked, and it's possible that there was never any profit gained from these projects, correct, she had to admit? Correct. Making matters even worse and even more generally, she had to admit she doesn't know whether any of the projects she identified ever even happened. She was asked, and it's possible that it's possible that the projects never happened, correct, she had to admit?  So even under the original playbook, that would have been necessary information to determine damages? That's correct, Your Honor. Under the original playbook, it speaks in terms of all jobs that have been paid in full. Street doesn't identify any jobs that were paid in full other than the ones she was actually paid for. So she can't identify whether it's under the supplemented 2018 playbook, as we've called it, the original 2018 playbook, as we've called it, the past pattern and practice of Room Ready, or even under the Pecurian Cause Doctrine, whether or not she earned the commission, she did the work to earn it, or whether or not there was any profit for which she was to receive a portion as a commission. How was a terminated employee supposed to know that information? Terminated employees, I believe, are provided with copies of the spreadsheet that are in the record. Certainly, that's one way that we would do it. The other way would be through the course of discovery. With respect to this particular matter specifically, if there were projects that came to fruition, that Street claimed that she did enough work to justify a commission under any theory, she could have requested that, she did request it, it would have been produced, and she could have pointed that out to either the trial court or here at this court. Street has failed to do that. There's no evidence of any project under any theory that was to the point that she would have received a commission, and there's no evidence of the dollar amount that she would have received as a commission on those projects, other than her pure speculation and conjecture with respect to projects that she thinks might have happened. So Street lacked any evidence that she earned a commission on the projects or the amount of a commission that she would have earned, and she didn't even establish that those projects took place. So Room Ready was therefore entitled to summary judgment regardless of what theory of contract interpretation was advanced by Street. So turning to the arguments that were advanced by Street, she argues that Room Ready's 2018 supplemented playbook were unenforceable unilateral modifications lacking consideration. She relies heavily on the case of Doyle versus Holy Cross Hospital. That argument doesn't change the outcome for two independent reasons. First, as I've stated, even if the court accepts Street's premise, she still cannot show damages. The circuit court examined three separate theories, the supplemented 2018 playbook, the prior 2018 playbook, and the procuring cause doctrine. And under all three, Street cannot prove an unpaid commission. Thus, the modification issue is legally irrelevant to the outcome of this case. Second, Illinois courts recognized that at-will employment agreements may be modified by the employer as a condition of continued employment. Therefore, even if the commission policy evolved over time, that alone doesn't invalidate the policy. This is also where it's clear that Street's reliance on Doyle is entirely misplaced. In Doyle, the employment policies created a right to be placed on a priority rehire list for a year after termination of employment, essentially a contractual guarantee. And that policy was later amended to state that the personnel policies do not create contractual rights or guarantees of employments for any period of time. Not only is this case not about the right to terminate Street's employment, in fact, it's not disputed she was an employee at-will, but the Supreme Court in the Doyle case expressly limited its holding to changes that were to an employee's disadvantage. Here, there were no changes to Street's disadvantage. In fact, it was the opposite. The changes were to her benefit. The primary purpose of the supplement was to codify changes to the treatment of negative commissions. Prior to a change in policy about a month or so before the supplement, the change was made in about July of 2018, the commission of sales employees would be reduced if a project was not profitable. That policy was changed to not take into account those negative commissions when determining commission payments. So in other words, one unprofitable project after the change in July could not affect the commission for a profitable project. The employee would still receive the commission for the profitable project. Unlike in Doyle, that was clearly to Street's benefit. The secondary purpose was to codify the policy of the payment of commissions to employees whose employment terminated. Again, that was to the benefit of Street, as it gave her a right to receive commissions even after her employment was terminated. In fact, she received commissions for 10 months after her employment was terminated. Absent a change to Street's disadvantage, Doyle is inapplicable and does not support her case. The Supplemented 2018 Playbook therefore applies as a matter of law. Having failed to establish that the Supplemented 2018 Playbook required consideration or that it lacked consideration, Street argues that the prior 2018 Playbook entitled her to a commission on all projects, regardless of the work that she puts into it, apparently. In making that argument, Street ignores portions of the policy. The policy, which counsel read, at the end of each month, all jobs that have been paid in full will pay out 17% of the actual GP, which stands for gross profit, to account executive's draw account. It would be absurd for Street to argue that after her employment was terminated, she was entitled to other benefits of employment that she received while she was an employee of RoomReady. But that's exactly what she's arguing with respect to the commissions. She wants to be paid post-employment commissions regardless of the work that she puts into a project, but that's not what the policy says. The policy says she would be paid on accounts that have been paid in full. Looking at the four corners of the policy, what she's advocating for is not for what it provides. Street would have been paid a commission only for those jobs that were paid in full. That suggests the project was quoted, the quote was accepted, the project was performed, and the project was paid. That policy is worse for Street than the supplemented 2018 Playbook. It would not have entitled her to additional commissions. And even if it did, she failed to establish even one project that was paid, profitable, and in which she was entitled to a commission. Street also argues that RoomReady admitted it did not have a clear commission payout definition where it was inconsistent and therefore was a factual dispute. The record demonstrates the exact opposite. There was a consistent past practice which was later formalized in the supplemented 2018 Playbook. Salespersons received commissions when one, a purchase order of the equivalent, existed prior to termination, and two, the client later paid the project in full. In addition, the undisputed evidence shows that six other salespersons left RoomReady during the relevant time period. All were paid commissions under the same practice, except for one employee who received a negotiated settlement. A negotiated settlement does not establish company policy. If it did, employers would never do it. It was a benefit that that employee received that she otherwise would not have received in exchange for a release. Counsel, can I ask, it seems as though the establishment, which would be your obligation in the motion, that she had been paid what she was due relies on the Sarah Nix Affidavit, correct? Yes, Your Honor. There was a Sarah Nix Affidavit that attached the documentation with the spreadsheet about the projects on which she was involved, also attached the payments that she did receive. There was an Affidavit of Erin McArdle that got more into the policy and less so into the actual payments and what was earned. So, and I know your position is that even under the original playbook, she had received all she's entitled to receive. My question is, Nix's Affidavit says that plaintiff was paid all of the commissions for all profitable client projects in accordance with the supplemented 2018 playbook. So, we don't have an Affidavit from Nix saying that she, your client has been paid everything she earned under the original Affidavit, which is your position. I'm sorry, the original playbook. Is that a hole in your game? No, Your Honor, I don't think so. And I think that we have to look at what Street actually said herself as well. In her Affidavit, and this is on page C-421 of the record, you know, we heard counsel say that she did all the work under the Pecurian Cause Doctrine or these other theories that they have advanced to entitle her to a commission. But that's not what the record actually says. The record says in the Affidavit of Christine Street, she says, during my employment, I solicited, procured, acquired, or otherwise garnered customers for Room Ready. That doesn't identify anything specific. It doesn't identify to what point she took it. It also says, I was not paid commissions for projects that did not have signed purchase orders as of the date I was terminated. That does not establish that she did the work on any other projects to get her to the point. Your Honor, I can't prove a negative. And if she had received summary judgment, that would be a problem for her. But you received summary judgment. So don't you have the obligation to prove that there's no issue of fact, but that she did get all the compensation she had coming to her? In other words, her inability to prove what she has coming to her doesn't remove your obligation as the moving party to disprove that she didn't get something she had coming to her. And Your Honor, I think if we keep in mind that the only way we would ever get to that point is if Street had established that the supplemented 2018 playbook did not apply, or that there wasn't this established past practice. The only way we would get there would be if we got to the point of the procuring cause doctrine, which again, she has failed to provide any evidence of damages, any evidence of a specific project. My client can't guess as to what project she claims might be entitled to a commission and say that she wasn't paid a commission on that. Right, but you're not making this as a Celotex type summary judgment motion where you're pointing to the plaintiff and saying the plaintiff can't prove her case. Are you? Oh, well, Your Honor, that's a part of it. She can't prove damages. She has absolutely no proof of her damages. So looking at that past practice of the commission payouts, Street herself was paid commissions under that exact practice. Instead of having an unclear policy, the undisputed facts confirmed that Room Ready consistently applied its commission rules, including by paying Street for 10 months after her employment was terminated. So even if the court ignored Street's lack of damages, even if the court ignored the supplemented 2018 playbook, even if the court ignored the prior 2018 playbook and applied the past practice, Street was bound by the past practice of Room Ready by accepting commissions under that past practice. She accepted them for 10 months after her employment had terminated. Finally, failing on all of her other arguments, Street argues that the procuring cause rule entitles her to commissions. But the procuring cause doctrine does not apply when a contract defines what commissions are earned. Illinois courts only apply the doctrine when no contractual terms govern the commission payment. Are there terms in the original playbook that so govern payment? The terms in the original playbook apply specifically to payments that would have been made when the employee was still employed by Room Ready. I mean, my interpretation of the original playbook is that when employment is terminated, if the project hadn't been paid in full at that point, that employee isn't entitled to any compensation. It says all jobs that have been paid in full will pay that out. Well, you can't continue to get these benefits after your employment has been terminated. That's not what it says. Room Ready actually did the employees a benefit by adding language into the playbook that gave them the right to receive commissions after employment. Here, both the playbook and Room Ready's established practice clearly define what the triggering conditions for commissions were. Salespersons received a commission when a purchase order equivalent existed prior to termination, and the client later paid the project in full. More importantly, under the Procuring Cause Doctrine, Streets' cases state that she had to establish that she had done everything necessary to affect the sale. Even if the doctrine applied, she cannot identify a sale for which she had done everything necessary to affect the sale, but satisfied the commission criteria, and for which she was not paid. Without proof of a specific project that she had done everything necessary to affect the sale, the doctrine can not create damages where none exist. So Streets' case suffers critical faults. Throughout the entire record, Street never identifies a specific project that meets the commission requirements and remain unpaid. Instead, she speculates about projects she believes might have happened, might have been profitable, and might have procured commissions. Illinois law is clear. Damages cannot be awarded based on speculation or conjecture. The Circuit Court properly granted summary judgment in favor of Roomready because Street cannot establish damages without speculation. The undisputed evidence shows she received every commission she earned, and her legal theories do not create a genuine issue of material fact. For those reasons, Roomready respectfully asked this court to affirm the judgment of the Circuit Court. Thank you. Thank you. Mr. Rustin, your rebuttal. I'll be very brief as it relates to discussing the common law record. I will point the court's attention to Exhibit 3, which is C-491 and C-492. It actually is a document produced by the defendant during discovery, and I think my client had it at some point in time. The affilee produced it, and it's titled Pending Jobs. It's actually a document that was provided to my client about her jobs that she had. It actually has a job number, a name of the jobs, talks about the commission paid or not, what percentage there was in a purchase order, whether it existed or not. In addition to that, I'll indicate that there's another section of the common law record that is the spreadsheet for the court's attention, shows C-522 and C-523. Very difficult to read these things, but this is what my client and I received in discovery as it related to identifying what jobs were paid, what jobs were not paid, and what jobs were paid from the client, right, the customer over to Room Ready, and then also to what salesperson not named Christine Street subsequent to Christine Street termination that also received a certain dollar number. So it is in the record. Yes, we weren't able to go to trial to prove that up, obviously, because summary judgment was granted, but everything that I just indicated, I think shows that there was a genuine issue of material facts, which negates summary judgment. I believe the trial court erred as it related to granting the Appalese motion for summary judgment. I'll make one other argument point, if I may. Counsel indicated that there was a past practice and that there were payments that Christine Street received. She testified about this in her deposition. Yes, she did receive checks from Room Ready post termination for about a nine to 10 month period, a considerable amount of money, but those were all for jobs, which she indicated very clearly, that had PO or some such similar documentation showing that the work had been previously done. So that was an agreement that apparently, according to Room Ready, decided, okay, well, these are the kind of cases that I wanna pay you on. These are the kind of cases I don't wanna pay you on. Well, that was because they assumed that the August 27th, 2018 changed playbook was enforceable. So even according to that, she was offered checks. Okay, fine. Her acceptance of those checks was by no means a legal waiver to accepting payments or to filing this lawsuit to go after what she believed was earned, to have the right to go to trial and show that yes, she had worked these particular jobs, these particular accounts for a substantial amount of time before she was terminated. And of course, the legal question is, well, was she entitled to it? But factually speaking, she was cut off to that. So to assume that the past practice served as some sort of legal waiver, I think that is not consistent with the procurement rule or any other Illinois law that's there. First time I've heard that argument, so I just wanted to address that for the court. But that's all that I have, Your Honor. All right, thank you to both counsel on behalf of the court. We will stand in recess and issue a decision in due course. Thank you.